*E-Filed 11/16/11*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

JACOB W. CONWAY,

        Petitioner,

    v.

JAMES WALKER, Warden,

        Respondent.

_____/

No. C 09-05857 RS

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## I.  INTRODUCTION

Petitioner Jacob Wendell Conway brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Conway challenges his conviction on two counts of kidnapping to commit robbery, California Penal Code section 209(b), based on an allegedly erroneous jury instruction and on the sufficiency of the evidence.[1]  For the reasons stated below, the petition is DENIED.

---

[1]  Conway's habeas petition initially asserted eight claims for relief: (1) failure to give cautionary jury instruction; (2) ineffective assistance of counsel for failure to request additional instructions; (3) cumulative error; (4) erroneous instruction on elements of kidnapping for robbery offense; (5) insufficient evidence to prove kidnapping for robbery; (6) violation of right to fair and impartial jury; (7) ineffective assistance of counsel for failure to advise properly on plea deal or to object to juror misconduct; and (8) ineffective assistance of counsel on appeal for failure to raise claims six and seven.  He now concedes and abandons all claims except for erroneous instruction and insufficiency of the evidence with respect to the kidnapping for robbery counts.

**United States District Court**
For the Northern District of California

## II.  BACKGROUND

In 2004, college students Geoffrey Kortbawi, Hilary Glenn, Amanda Ward, and Jonathan Erickson lived together at 151 Clay Street in Santa Cruz, California.  A second residence, 149 Clay Street, was situated in front of their home and was occupied by five fellow students.  Conway, a friend of Kortbawi, stayed for several weeks at the 151 Clay Street house.

On the evening of December 11, 2004, Kortbawi was outside of the 151 Clay Street house when he heard someone say, "don't move."  Kortbawi started to run and made it partway down the driveway when he heard a gunshot.  At that point, Kortbawi stopped, the shooter grabbed his arm, pointed the gun at him, and moved him back to the house.  This man, along with several others, then engaged in a robbery of the 151 Clay Street house.  The robbers forced Kortbawi, his visiting friend Cameron Kaplan, Erickson, and Glenn to lie down on the living room floor.  After some time, the robbers moved Kortbawi, Kaplan, and Erickson first to Ward's room and then to the bathroom.  One of the robbers took Glenn by the arm, told her she was going with him, and led her toward the front door.  When Glenn resisted, the man hit her on the back of the head causing her to fall down.  He then dragged her by her ponytail down the stairs.  The robber waived a gun at Glenn and told her they were going to the house at 149 Clay Street, where she was to knock on the back door.

A second man appeared and held a gun to Glenn's temple and forced her to walk out of her residence and over to the back door of that house.  This second man told Glenn to knock on the door, which she proceeded to do.  One of the residents, Christopher Bella, answered the knock.  When the second man put his gun into the open door, Bella tried to shut it, but the robber pushed it open and brought Glenn inside.  The robbers then forced the occupants of the house to lie on the floor of a bedroom while they ransacked the residence.

In August 2005, a jury found Conway guilty of two counts of kidnapping to commit robbery (Cal. Pen. Code § 209(b)), six counts of residential robbery (Cal. Pen. Code §§ 211, 212.5, 213(a)(1)(A)), four counts of assault with a firearm (Cal. Pen. Code § 245(a)(2)), and seven counts of false imprisonment by violence (Cal. Pen. Code §§ 236, 237(b)).  The trial court sentenced Conway to an indeterminate term of life with the possibility of parole and a determinate sentence of ten years, to be served consecutively.  On April 30, 2007, the California Court of Appeal affirmed

1   the judgment, after which the California Supreme Court denied review.  Conway filed various

2   habeas petitions in state court with the California Supreme Court denying the final petition in June

3   2009.  Conway subsequently filed this federal habeas petition.

4                                    III.  LEGAL STANDARD

5        This Court will entertain a petition for writ of habeas corpus "in behalf of a person in

6   custody pursuant to the judgment of a State court only on the ground that he is in custody in

7   violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Under

8   the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the petition may not be

9   granted with respect to any claim that was adjudicated on the merits in state court unless the state

10  court's adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable

11  application of, clearly established federal law, as determined by the Supreme Court of the United

12  States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in

13  light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

14       "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

15  arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the

16  state court decides a case differently than [the] Court has on a set of materially indistinguishable

17  facts."  *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).  "Under the 'reasonable

18  application clause,' a federal habeas court may grant the writ if the state court identifies the correct

19  governing legal principle from [the] Court's decisions but unreasonably applies that principle to the

20  facts of the prisoner's case."  *Id.* at 413.  "[A] federal habeas court may not issue the writ simply

21  because that court concludes in its independent judgment that the relevant state-court decision

22  applied clearly established federal law erroneously or incorrectly.  Rather, that application must also

23  be unreasonable."  *Id.* at 411.

24       A federal habeas court may grant the writ if it concludes that the state court's adjudication of

25  the claim "results in a decision that was based on an unreasonable determination of the facts in light

26  of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The court must

27  presume that any determination of a factual issue by a state court is correct unless the petitioner

28  rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

**United States District Court**
For the Northern District of California

# IV.  DISCUSSION

California Penal Code section 209(b) provides: "(1) Any person who kidnaps or carries away any individual to commit robbery . . . shall be punished by imprisonment in the state prison for life with the possibility of parole.  (2) This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, and increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense."  In his first claim for relief, Conway argues that the trial court provided an erroneous jury instruction for the kidnapping for robbery offense.  In particular, he asserts that the instruction failed to include the requirement that movement of the victim must "substantially" increase the risk of harm.  He also contends that the instruction did not adequately inform the jury that the movement must not be incidental to the underlying robbery.  In his second claim, Conway alleges that insufficient evidence exists to support his convictions on the two counts of kidnapping for robbery.

At the time of his trial, the standard kidnapping for robbery jury instruction provided, in relevant part:

> Kidnapping is the unlawful movement by physical force of a person without that person's consent for a substantial distance where the movement is not merely incidental to the commission of the robbery and where the movement *substantially* increases the risk of harm to the person moved, over and above that necessarily present in the crime of robbery itself.

> In this crime, namely, kidnapping to commit robbery, the risk of harm requirement refers to the risk of either physical or mental harm.

> Kidnapping is also the unlawful compulsion of another person without that person's consent and because of a reasonable apprehension of harm, to move for a substantial distance where such movement is not merely incidental to the commission of the robbery and where the movement *substantially* increases the risk of harm to the person moved, over and above that necessarily present in the crime of robbery itself.

> Brief movements to facilitate the crime of robbery are incidental to the commission of the robbery.  On the other hand, movements to facilitate the robbery that are for a substantial distance rather than brief are not incidental to the commission of a robbery.

> In order to prove this crime, each of the following elements must be proved:

(1) A person was moved by the use of physical force; [or alternatively] A person was compelled to move because of a reasonable apprehension of harm;

(2) The movement of that person was caused with the specific intent to commit robbery and the person causing the movement had the required specific intent when the movement commenced;

(3) The movement of the person was without that person's consent;

(4) The movement of that person was for a substantial distance, that is, a distance more than slight, brief or trivial; and

(5) The movement *substantially* increased the risk of harm to the person moved, over and above that necessarily present in the crime of robbery itself.

CALJIC 9.54 (emphasis added).

A.    Risk of Harm

The standard jury instruction reflects prior California Supreme Court decisions construing kidnapping for robbery as "requir[ing] movement of the victim that is not merely incidental to the commission of the robbery, and which substantially increases the risk of harm over and above that necessarily present in the crime of robbery itself." *People v. Rayford*, 9 Cal. 4th 1, 12 (1994) (citing *People v. Daniels*, 71 Cal. 2d 1119, 1139 (1969); *In re Earley*, 14 Cal.3d 122, 127-128 (1975)). In 1997, the California Legislature amended section 209(b), which now expressly provides that movement of the victim must "increase the risk of harm," without reference to "substantially." Cal. Pen. Code § 209(b)(2). For that reason, the prosecution in Conway's trial sought to remove the word "substantially" from the standard jury instruction and, over Conway's objection, the court granted the request.

In 1999, the California Supreme Court discussed the amendment and described section 209(b)(2) as codifying *Rayford* and a "modified" version of the *Daniels* standard. *See People v. Martinez*, 20 Cal. 4th 225, 232 n.4 (1999). The Court further explained: "Unlike our decisional authority, it does not require that the movement 'substantially' increase the risk of harm to the victim." *Id.* Thus, in *Martinez*, the Court states the standard for aggravated kidnapping as "movement of the victim that is not merely incidental to the commission of the underlying crime

United States District Court
For the Northern District of California

1    and that increases the risk of harm to the victim over and above that necessarily present in the

2    underlying crime itself." *Id.* at 232.

3         Conway characterizes the discussion in *Martinez* as dictum and contends that "substantially

4    increases" remains a required element of the offense.  The appellate court expressly rejected this

5    argument in finding that the trial court did not err by modifying CALJIC No. 9.54 over defendant's

6    objection.  The appellate court also rejected Conway's reliance on *People v. Nguyen*, 22 Cal. 4th

7    872, 878 (2000), in which the California Supreme Court states generally that the risk of harm

8    requirement from its prior case law was made explicit in the 1997 amendment.  As the case does not

9    involve any question regarding whether "increase" or "substantially increase" is the appropriate

10   standard for the risk of harm, *Nguyen* does not hold, as Conway asserts, that the latter remains an

11   element of kidnapping for robbery.

12        To the extent Conway challenges the appellate court's interpretation of California law, this

13   Court is bound to follow its conclusion.  As directed by the Supreme Court:  "We have repeatedly

14   held that a state court's interpretation of state law, including one announced on direct appeal of the

15   challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546

16   U.S. 74, 76 (2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Mullaney v. Wilbur*, 421

17   U.S. 684, 691 (1975)).  Thus, Conway's suggestion that this Court must determine for itself whether

18   the appellate court's interpretation of the kidnapping for robbery statute is consistent with California

19   rules of statutory construction must be rejected.  For the same reason, Conway's due process

20   argument that presupposes the appellate court's definition of the offense omits a material element is

21   untenable.  Instead, Conway would only be entitled to habeas relief if he demonstrates that the jury

22   instruction otherwise violated a federal constitutional right.

23        A federal court may grant habeas relief, if the state court's construction of a criminal statute

24   is "unexpected and indefensible by reference to the law which had been expressed prior to the

25   conduct in issue." *Sanders v. Lewis*, No. C 01-00961 SI, 2002 U.S. Dist. LEXIS 18015, at *13

26   (N.D. Cal. Sept. 23, 2002) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964)) (internal

27   quotation marks omitted).  As part of due process, a criminal statute, "either standing alone or as

28

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1    construed," must provide fair warning that a defendant's conduct was criminal at the relevant time.

2    *See United States v. Lanier*, 520 U.S. 259, 267 (1997).

3            In this case, section 209(b), as amended in 1997, expressly includes the requirement that

4    movement of the victim must "increase[] the risk of harm" above that necessarily involved in the

5    robbery.  In reviewing Conway's 2005 conviction, the appellate court relied on this text, as well as

6    the 1999 *Martinez* decision explaining that the statute did not require a substantial increase in the

7    risk of harm.  The appellate court further cited to a 2002 decision from its fellow appeals court that

8    followed *Martinez* in construing the risk of harm requirement in kidnapping for carjacking.  *See*

9    *People v. Ortiz*, 101 Cal. App. 4th 410, 415 (2002) ("[W]e hold that kidnapping for carjacking (§

10   209.5), like aggravated kidnapping (§ 209), does not require that the physical movement of the

11   victim substantially increase the risk of harm; it is enough that commission of the offense creates a

12   risk of harm greater than that incidental to simple carjacking.").  Conway points to judicial decisions

13   that continue to refer to a substantial increase in the risk of harm, including those after the date of

14   his offense.  *See, e.g.*, *People v. Corcoran*, 143 Cal. App. 4th 272, 280 (2006) (concluding that

15   movement of the victims "substantially increased the risk of harm beyond that inherent in the crime

16   of attempted robbery").  He does not suggest, however, that no prior decision provided notice of the

17   statutory construction applied by the court during his trial.  Accordingly, the appellate court's

18   decision to uphold the trial court's construction of the kidnapping to commit robbery statute does

19   not contravene the fair notice requirement of the due process clause.

20           In his final challenge to the risk of harm portion of the jury instruction, Conway asserts that

21   the enforcement of inconsistent constructions itself violates the due process clause.  As the standard

22   jury instruction, even after the 1997 amendment, continues to include the "substantially increases"

23   language, Conway suggests that most criminal trials involving kidnapping for robbery charges likely

24   apply a higher standard for risk of harm.  He therefore argues that application of a "different"

25   standard in his case is "grossly unconstitutional."  The Supreme Court case on which he relies,

26   however, does not stand for the proposition that inconsistency in judicial constructions violates a

27   defendant's due process rights.  *See Fiore v. White*, 531 U.S. 225 (2001).  In *Fiore*, the Court held

28   that the defendant's conviction violated the due process clause where the Pennsylvania Supreme

1    Court clarified that the law, at the time of Fiore's conviction, included an element of the offense for

2    which both parties agreed no evidence had been presented at trial.  *Id.* at 229.  That circumstance is

3    simply not present in Conway's case.  In sum, the appellate court's decision upholding the trial

4    court's omission of "substantially" from the jury instruction is not contrary to, or an unreasonable

5    application of, clearly established federal law and the petition for habeas relief on this basis must be

6    denied.

7    **B.**    <u>Movement That is Not Merely Incidental</u>

8          Conway also argues that the trial court failed sufficiently to instruct the jury that movement

9    of the victim must not be "merely incidental" to the robbery.  *See Rayford*, 9 Cal. 4th at 12

10   (explaining that kidnapping for robbery requires movement of the victim that is "not merely

11   incidental" to the robbery).  In order to obtain habeas relief based on a claim that a jury instruction is

12   erroneous, a petitioner must establish that the error "so infected the entire trial that the resulting

13   conviction violates due process."  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  In reviewing an

14   ambiguous instruction, the court considers "'whether there is a reasonable likelihood that the jury

15   has applied the challenged instruction in a way' that violates the Constitution."  *Id.* (quoting *Boyde*

16   *v. California*, 494 U.S. 370, 380, (1990)).

17         As part of the instruction's introductory language, kidnapping is defined as involving

18   movement that "is not merely incidental to the commission of the robbery."  During recitation of the

19   five elements of the crime, however, no reference to non-incidental movement is included.

20   Nonetheless, the appellate court observed that the accused instruction expressly requires that the

21   jury find both that the victims were moved a "substantial" distance and that the movement increased

22   the risk of harm above that inherent in the robbery itself.  The appellate court therefore reasoned that

23   the instruction ensured the jury implicitly found that the movement was more than incidental to the

24   underlying robbery.  In considering the instruction as a whole, it is not reasonably likely that the

25   jury construed it in a manner that resulted in a due process violation.  Accordingly, the appellate

26   court's conclusion of no instructional error below is not contrary to, or an unreasonable application

27   of, clearly established federal law and Conway's request for habeas relief on this claim must denied.

28

**United States District Court**
For the Northern District of California

C.      Sufficiency of the Evidence

Conway also challenges the sufficiency of the evidence supporting his conviction on the two counts of kidnapping for robbery.  The Supreme Court has held that, in reviewing a sufficiency of the evidence claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Conway argues that *Jackson* is inapplicable, based on his claim that the trial court erroneously eliminated an element of the offense when it removed "substantially" from the increased risk of harm requirement. As discussed above, Conway has not established that the jury instruction violated his due process rights and, therefore, the appellate court's decision to uphold his conviction will be reviewed as to whether it constitutes an unreasonable application of federal law under *Jackson*.

In determining whether movement is not merely incidental to the underlying robbery, the jury considers the "scope and nature" of the movement.  *Rayford*, 9 Cal. 4th at 12 (quoting *Daniels*, 71 Cal.2d at 1131 n.5).  Although the actual distance a victim is moved is considered, there is no minimum range that necessarily constitutes non-incidental movement.  *Id.*  Instead, the circumstances and context of the movement must be considered.  *Id.*  Movements that are brief and insubstantial, including those around the premises in which the victim is found, are generally considered incidental.  *Id.*  "By contrast, relatively short distances have been found not to be incidental where the movement results in a substantial change in the 'context of the environment.'" *People v. Diaz*, 78 Cal. App. 4th 243, 247 (2000) (citations omitted).  In determining whether movement of the victim increases the risk of harm above that involved in the robbery itself, relevant factors include "the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes." *Rayford*, 9 Cal. 4th at 13.

In this case, the appellate court observed that Kortbawi was outside of his living quarters when first approached by the robbers.  He ran partway down the driveway, but stopped when he heard a gun fired.  At that point, he was taken at gunpoint inside the house and upstairs to the living room.  Thus, Kortbawi was not merely moved "around inside the premises" in which the robbers

**United States District Court**
For the Northern District of California

1    found him.  *Daniels*, 71 Cal. 2d at 1140.  The appellate court concluded that a reasonable jury could

2    find that such movement was not merely incidental and, because it prevented his escape, that the

3    movement increased the risk of physical or emotional harm to Kortbawi.

4           With respect to Glenn, she was inside the 151 Clay Street house when the robbery began.

5    She was singled out from the male victims and taken, at gunpoint, down a flight of stairs and moved

6    outside approximately 25 feet to a different dwelling.  There, Glenn was forced to knock on the door

7    and, when the resident who opened the door attempted to close it again, the gunman pushed the door

8    open and brought Glenn inside.  In its decision, the appellate court remarked that Glenn was moved

9    "to the inside of a different house with a different address and different, unrelated, residents."

10   Although the occupants of the two houses were friends and spent time together, contrary to

11   Conway's assertion, that circumstance does not render the appellate court's observation that the

12   houses were unrelated residences an unreasonable determination of the facts in violation of the

13   AEDPA.  As the appellate court concluded, the jury could reasonably find that the movement of

14   Glenn was more than incidental and that forcing her to appear at the door of the second home with

15   an armed robber increased her risk of harm.  In short, the appellate court's decision to uphold

16   Conway's conviction on two counts of kidnapping for robbery is not contrary to, or an unreasonable

17   application of, *Jackson*.  Thus, his claim for habeas relief based on the insufficiency of evidence

18   must be denied.

19

20                                            V.  CONCLUSION

21          For the reasons stated above, the petition for writ of habeas corpus is DENIED.  A certificate

22   of appealability will not issue.  Reasonable jurists would not "find the district court's assessment of

23   the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

24   Petitioner may seek a certificate of appealability from the Court of Appeals.  The Clerk shall enter

25   judgment in favor of respondent and close the file.

26

27          IT IS SO ORDERED.

28

Dated:  11/16/11

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

No. C 09-05857 RS
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS